IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| KEVIN HOWARD, | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. H-07-1359 |
| | § | Jury Demanded |
| JACOBS ENGINEERING, INC., | § | |
| Defendant. | § | |

## KEVIN HOWARD'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Respectfully submitted,

BARNES & TURNER

By:_____
Jermaine S. Thomas
Attorney-in-Charge
Texas Bar No. 24033386
Southern District Bar No:  31098
440 Louisiana
1880 Lyric Centre
Houston, TX  77002
Tel. (713)650-3688
Fax. (713)650-0308
Attorney for Plaintiff
Kevin Howard

## TABLE OF CONTENTS

I. SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . 1

II. GENUINE ISSUES OF MATERIAL FACTS . . . . . . . . . . . 2

    A.   Kevin Howard . . . . . . . . . . . . . . . . . . 2

    B.   Howard Receives Promotions as a
        result of his Work Performance . . . . . . . . . . 3

    C.   Jennifer Phillips, a White Female
        Refuses to Train Howard and other
        Black Employees . . . . . . . . . . . . . . . . . 4

    D    Jesse Evans, a White Jacobs Employee
        Asks Howard If it Was Appropriate to
        Refer to Howard as a Nigger . . . . . . . . . . . 5

    E.   Nicholas Bowman, a White Male Not
        Terminated Despite Significant
        Absenteeism and Tardiness . . . . . . . . . . . . 5

    F.   Beverly Dye, a White Female Not
        Terminated Despite Falling Asleep
        at Work on several Occasions . . . . . . . . . . . 6

    G.   Jacobs "De-staffs" All Premcor Project
        Employees but Howard Is the Only
        Employee Terminated . . . . . . . . . . . . . . . 6

    H.   Non-black "Problem" Employees
        Transferred to Other Departments
        Within the Company . . . . . . . . . . . . . . . . 7

III. ADDITIONAL OBJECTIONS TO PLAINTIFF'S EVIDENCE 8

    A.   Hearsay Objections . . . . . . . . . . . . . . . . 8

IV. ARGUMENTS AND AUTHORITIES . . . . . . . . . . . . . . . 9

A.   Howard Has Established a Prima
     Facie Case of Race or Sex Discrimination . . . . . 10

     1.   Howard was treated less favorably
          than other similarly situated
          employees outside his protected class . . . . 10

     2.   Howard has demonstrated that he was
          discriminated against because he is
          an African-American male . . . . . . . . . . 12

B.   Jacobs Assertion That Howard Was Terminated
     for Legitimate, Non-discriminatory
     Reasons, Is Pretext for Race Discrimination . . . 14

V. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . 14

## TABLE OF AUTHORITIES

### CASES

Adickes v. S.H Kress & Co.,
398 U.S. 144 (1970) . . . . . . . . . . . . . . . . . . 9

Akin v. Q-L Investments, Inc.,
959 F.2d 521 (5th Cir. 1992) . . . . . . . . . . . . . 9

Anderson v. Liberty Lobby, Inc.,
477 U.S. 242 (1986) . . . . . . . . . . . . . . . . . . 9

Martin v. John W Stone Oil Distrib., Inc.,
819 F.2d 547,549 (5th Cir. 1987) . . . . . . . . . . . 9

McDonnell Douglas Corp. v. Green,
411 U.S. 792, 802 . . . . . . . . . . . . . . . . . . 10

Salas v. Carpenter,
980 F.2d 299, 305 (5th Cir. 1992) . . . . . . . . . . . 8

St. Mary's Honor Ctr.,
113 S.Ct. at 2747 . . . . . . . . . . . . . . . . . . 10

Waggoner v. City of Garland
987 F.2d 1160, 1163 (5th Cir.1993) . . . . . . . . . . 10

Wheeler v. BL Development Corp.
415 F.3d 399, 406 (C.A.5 (Miss.),2005) . . . . . . . . 10-11

### STATUTES

Fed.R.Civ.P. 56(e) . . . . . . . . . . . . . . . . . . 9

Fed.R.Evid. 602 . . . . . . . . . . . . . . . . . . . . 9

-iii-

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| KEVIN HOWARD, | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. H-07-1359 |
| | § | Jury Demanded |
| JACOBS ENGINEERING, INC., | § | |
| Defendant. | § | |

## KEVIN HOWARD'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Kevin Howard ("Howard") files this Response to Defendant Jacobs Engineering, Inc.'s ("Jacobs") Motion for Summary Judgment. Because of numerous material issues of fact in controversy exists and Defendant has failed to prove that he is entitled to judgment as a matter of law, Defendant's motion should be denied.

### I. SUMMARY OF ARGUMENT

Disregarding crucial relevant testimony and evidence revealed during discovery, Jacobs erroneously asserts summary judgment is proper against Howard's claims under 42 U.S.C. 1981.

Jacob's Motion on the issue of liability rests on the flawed premise and claim that there is no contradicting evidence on issues that would create a fact issue as to whether or not Howard's termination resulted from race and/or sex discrimination.

1

The record is replete with genuine material fact issues at the very core of Howard's allegation that precludes summary judgment. It is clear that Jacobs effectively operated with different accountability standards for its employees based on the race of the employee.   In fact, Jacobs actions as it related to Howard were so egregious and inherently unfair that it prompted Linda Giles, a present Jacobs employee, to question whether Howard's unfair treatment was motivated by the color of his skin.  It is clear that Howard's termination was not because he lacked a requisite skill set, but rather because Howard's supervisors intended to cause him pain as the result of some declared personal animosity.

The record is complete with evidence that many of Jacobs African-American employees felt that they were held to a different accountability standard than the white employees.

Moreover, Plaintiff submits inadmissible evidence in support of her Motion which cannot be relied upon and should, therefore, be struck.

Jacobs has wholly failed to meet its summary judgment burden to conclusively establish that it should be entitled to judgment as a matter of law.

For these reasons, Jacob's motion should be denied.

## II. GENUINE ISSUES OF MATERIAL FACTS

**A.   Kevin Howard.**

Kevin Howard began working at Jacobs as a contract employee

2

through an employment placement agency in 2002. At that time, Howard was a thirty-three (33) year old, African-American male. After leaving college and prior to his employment with Jacobs, Howard had significant employment history in mail services as a Mail Room Manager. Howard also had a significant employment history as a photographic technician.

**B.   Howard Receives Promotions as a result of his Work Performance.**

Howard, originally a contract employee, was hired to work in the facilities department at Jacobs as the result of his work performance.[1] Howard's original supervisor was Richard Connelly, a white male. While working under Connelly, Howard was subjected to Connelly's use of derogatory slurs. Specifically, Connelly would often refer to Hispanics as "wetbacks".[2] Howard also learned that Connelly would refer to blacks as "niggers".[3] Howard did not complain about Connelly's comments to Human Resources because he was aware that Connelly had a personal relationship with the Human Resource Director, John Kadash.[4]

Howard worked under Connelly for a year until he was promoted to run the front desk in the reprographics department by Mr.

---

[1] Howard Deposition at 48.

[2] Howard Deposition at 38.

[3] Howard Deposition at 53.

[4] Howard Deposition at 44.

3

Connelly's immediate supervisor.[5]  In 2004, as a result of his performance Howard was promoted to the document control department.[6]  Over this time period, Howard's hourly salary rose from $10.00 to approximately 13.00 an hour.[7]

Howard's work performance was thorough, he was dependable and he was considered a resource.[8]

### C. Jennifer Phillips, a White Female Refuses to Train Howard and other Black Employees.

While working in the document control department, Howard was assigned to the Premcor Project. Jennifer Phillips, a white female was assigned by her supervisors to train Howard in the JPI software that was essential to performing in the document control department. For no apparent reason, Phillips refused to train Howard.[9]  After Howard informed Cristina Dunn, Phillips' supervisor, that Phillips refused to train him, Howard was assigned to distributing hard copies.

Later, Phillips was assigned to train Linda Giles, an African-American female. Again Phillips for no apparent reason refused to train Giles. Phillips also refused to provide training to Rhonda

---

[5] Howard Deposition at 45-46.

[6] Howard Deposition at 56.

[7] Howard Deposition at 37 and 47.

[8] Linda Giles Deposition at 19 and 81.

[9] Howard Deposition at 62.

4

Cotton, another African-American female.[10]

    **D.**    **Jesse Evans, a White Jacobs Employee Asks Howard If it Was Appropriate to Refer to Howard as a Nigger.**

In 2005, Howard was approached by Jesse Evans, a white male employee for Jacobs. In initiating a conversation with Howard, Evans referred to himself as "white trash" and then asked Howard whether or not he could call Howard a "nigger" in an effort to test their friendship.[11] Howard complained to the Project Manager, Joe Magliaro about Evans comments and was told that Evans' comments would be addressed.[12]

    **E.**    **Nicholas Bowman, a White Male Not Terminated Despite Significant Absenteeism and Tardiness.**

While employed with Jacobs, Howard and other African-American employees were subjected to an atmosphere in which African-American employees felt that white employees were granted more leniency and were allowed to behave in a manner that African-Americans were not.[13] For instance, Nicholas Bowman, a white male employed in the document control department, consistently came to work late and fail to mark his time sheet.[14] In fact, Bowman would also often not

---

[10] Linda Giles Deposition at 42.

[11] Howard Deposition at 90-91.

[12] Howard Deposition at 99.

[13] Howard Deposition at 167, Giles Deposition at 56 and Dunn Deposition at 173.

[14] Giles Deposition at 54.

show up for work without calling in to inform his superiors of his expected absence.[15]  When Bowman would actually show up for work he would often arrive late.[16]

It was not until after this lawsuit was filed that Bowman was terminated for his absenteeism and tardiness.  In fact, Bowman missed an entire week of work without calling in to his supervisor before he was terminated.[17]

### F.   Beverly Dye, a White Female Not Terminated Despite Falling Asleep at Work on several Occasions.

There was also other examples of unfair treatment as it related to the white employees, which added to the general perception.  For instance, Beverly Dye, a white female was often photographed by her colleagues while sleeping at her desk.  The pictures where often passed around throughout the office.  Dye was never terminated for falling asleep while working.  Again, Jacob's African-American employees felt that they could not behave in the same fashion.[18]

### G.   Jacobs "De-staffs" All Premcor Project Employees but Howard Is the Only Employee Terminated.

At the conclusion of a particular project, Jacobs destaffs its employees pending an assignment to a new project.  Typically at

---

[15] Dunn Deposition at 102.

[16] Dunn Deposition at 103.

[17] Dunn Deposition at 106.

[18] Giles Deposition at 70.

Jacob's when an employee is destaffed, they are often transferred to other positions within the company.[19]   In fact, of all the employees that were destaffed from the Premcor Project, Howard was the only employee actually terminated.[20]

In December 2005, Howard is told to prepare to transition from the Premcor Project because he might be destaffed.  He is told that he could remain employed as a floater or that he should contact Human Resources to explore other job opportunities within the company.  Howard then made inquiries into the Piping Department for an entry level position.   Howard was informed that once he completed the Auto CAD training that he would be accepted into the Piping Department.[21]  Accordingly, Howard initiated steps to begin the Auto CAD training which was scheduled for April 1, 2006.[22]  Dunn approved the course at Howard's request; however, she then worked to undermine Howard's acceptance into the Piping Department.  In fact, she informed Giles that she was not pleased that Howard would be transferring to the Piping Department.[23]

**H.   Non-black "Problem" Employees Transferred to Other Departments Within the Company.**

---

[19] Giles Deposition at 87.

[20] Giles Deposition at 127.

[21] Howard Deposition at 163-164.

[22] Dunn Deposition at 134.

[23] Giles Deposition at 89.

7

On or about March 31, 2006, Dunn contends that Howard was terminated because there was no other job available at Jacobs for his skill set.  However, there were positions available in other departments, specifically the Piping Department that Dunn and/or Fletcher worked to undermine Howard from gaining.  Dunn and Fletcher did not believe it was appropriate to transfer a "perceived problem employee" from one department to another. Apparently, this policy was one that was only adopted to apply to Howard.

The record is clear that Jacobs had a history of transferring perceived problem employees between various departments.  Phillips, the white female who refused to train her African-American colleagues and who also had issues regarding absenteeism was allowed to transfer into another department.  In fact, the treatment of Howard was so alarming that it prompted Giles to ask whether the color of Howard's skin was the basis for the disparity in treatment.[24]

### III. ADDITIONAL OBJECTIONS TO PLAINTIFF'S EVIDENCE

Affidavits "submitted for summary judgment determinations must set forth facts 'as would be admissible in evidence'" at trial. *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992).

### A.   Hearsay Objections.

---

[24] Giles Deposition at 64.

Statements not made on personal knowledge contained in an affidavit or affidavits are not proper summary judgment evidence. FED.R.CIV.P. 56(e); *Akin v. Q-L Investments, Inc.* 959 F.2d 521, 530 (5th Cir. 1992); see also FED.R.EVID. 602. To that end, hearsay evidence contained in an affidavit is inadmissible and not appropriate summary judgment evidence. See *Martin v. John W Stone Oil Distrib., Inc.*, 819 F.2d 547,549 (5th Cir. 1987); see also FED.R.EVID. 802.

## IV. ARGUMENTS AND AUTHORITIES

To support a motion for summary judgment, the moving party has the burden of showing the absence of a genuine issue as to any material fact, and for these purposes the material it lodged must be viewed in the light most favorable to the opposing party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). If a reasonable jury could return a verdict for the nonmoving party, then a motion for summary judgment cannot be granted because there exists a genuine issue of fact. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 428 (1986).

Howard's claims clearly withstand summary judgment. First, Howard has established a prima facie case of race or sex discrimination. Further, Jacobs' assertion that Howard was terminated for legitimate, non-discriminatory reasons, is pretext for race discrimination.

9

A.    **Howard Has Established a Prima Facie Case of Race or Sex Discrimination.**

In order to establish a prima facie case of race discrimination, the plaintiff must show: (1) he is a member of a protected group; (2) he was qualified for the position; (3) an adverse employment action occurred; and (4) he was replaced by a person not in the protected group. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). Alternatively, he may establish a prima facie case by showing that he is a member of a protected class, he was qualified for the position, and persons outside the protected class were treated more favorably than he. *Waggoner v. City of Garland*, 987 F.2d 1160, 1163 (5th Cir.1993); At all times, the plaintiff has the ultimate burden to prove race discrimination. *St. Mary's Honor Ctr.*, 509 U.S. at --, 113 S.Ct. at 2747.

Moreover, Howard can demonstrate through summary judgment evidence that he was treated less favorably than other similarly situated employees outside his protected class, further, Howard has demonstrated that he was discriminated against because he is an African-American male.

1.    **Howard was treated less favorably than other similarly situated employees outside his protected class.**

To establish disparate treatment, a plaintiff must demonstrate that a "similarly situated" employee under "nearly identical" circumstances, was treated differently. *Wheeler v. BL Development*

10

*Corp*. 415 F.3d 399, 406 (C.A.5 (Miss.),2005).

Jacobs maintains that Howard was terminated because of his lack of skill set in that he was low performing.  However, the record indicates that Howard was not the only the only "low performing employee" in the department.  Notwithstanding, he was the only one that was fired:

> Q.   -- in that department. ***Are you aware of any other employees who were terminated on March 31st or at the time they were to be de-staffed in that department?***
>
> A.   *No*.
>
> Q.   So ***Kevin Howard was the only one of the low-performing   employees   who   was terminated?***
>
> A.   ***That's correct***.
>
> Q.   How   many   employees   are   in that department?
>
> A.   Today?
>
> Q.   At that time, roughly March of 2006.
>
> A.   I don't know.  60.
>
> Q.    Are you the supervisor for those 60 employees?
>
> A.   No, sir.  I'm the manager.[25]

The record is clear that Jacobs had a history of transferring perceived problem employees between various departments. Phillips, the white female who refused to train her African-American

---

[25] Dunn Deposition at 150. (emphasis added)

11

colleagues and who also had issues regarding absenteeism was allowed to transfer into another department.   In fact, the treatment of Howard was so alarming that it prompted Giles to ask whether the color of Howard's skin was the basis for the disparity in treatment.[26]

   **2.   Howard can demonstrate that he was discriminated against because he is an African-American male.**

   While employed at Jacobs, a rumor was spreading across the office that Howard was dating a female Asian employee.[27]  Dunn and Courtney Fletcher, Howard's supervisor within the group, expressed an unusual concern about the relationship:

> Q.   I'm sorry.  You're one page over.  Number 3 -- Page 3, and then Number 9.   No. You're right.  Right there.
>      Paragraph 9, ***"Defendant, Jacobs Engineering, Inc., intentionally engaged in unlawful employment practices involving Plaintiff because he has a male."  What's the basis of that allegation?***
>
> A.   Again, I feel like I was discriminated against because, you know, the things I witnessed and me being a black male.  I just -- and the black -- male came in with the Lisa incident and, you know, the comments that Courtney would make to Lisa that just led me to believe that's why Lisa said that she didn't think that she liked black people, just the comments that she made, you know, that "I can't believe, you know" -- and all this is allegation again.  She's bombarding her with ***"I can't believe, you know, you're***

---

[26] Giles Deposition at 64.

[27] Dunn Deposition at 153.

> *F'ing, you know, a black man,"* and we
> were only friends, you know. So --[28]

Although the rumors were unfounded, Howard was further

subjected to harassment from other employees:

> Q.   (BY MS. MURPHY) Well, this is your
> opportunity. So *I need you to tell me
> anything and everything that you believe
> shows that you were subjected to racial
> discrimination when you were at Jacobs*.
>
> A.   I think I told you -- oh, I didn't tell
> you about the Don Foreman situation when,
> again, they thought that I was dating
> Lisa and Don Foreman made this comment in
> front of Jerry Evans. They both sat by
> each other, and he said something to the
> effect that *"Kevin, don't you ever do
> that again. Me and Jerry was talking,"*
> and Jerry said "Do what?" And I'm
> looking at him and he said "Don't you
> ever do that again." I said "Do what?"
> He said *"You know, where I come from
> people like you will be put back in their
> place,"* you know, and that was all around
> the time of -- he didn't get into
> specifics, but *I knew it was because of
> Lisa* because he was one of the guys --
> again, me and Lisa was close. So she
> told me pretty much the guys that hit on
> her. He was pretty much one of the guys
> that hit on her. So I knew that that was
> all coming from the assumption that I was
> seeing Lisa. So --
>
> Q.   So that's what you assumed he was talking
> about?
>
> A.   That's what I knew he was talking about.

But for Howard being an African-American male, his purported

---

[28] Howard Deposition at 178. (emphasis added)

relationship with Lisa would not have been a basis for office gossip.

B.     Jacobs Assertion That Howard Was Terminated for Legitimate, Non-discriminatory Reasons, Is Pretext for Race Discrimination.

To demonstrate a pretext for race discrimination, under Title VII, the employee must show both that the employer's proffered reason was false and that race discrimination was the real reason. *Guerin v. Pointe Coupee Parish Nursing Home* 246 F.Supp.2d 488 (M.D.La.,2003). The evidence clearly demonstrates that Howard was terminated for illegitimate, discriminatory purposes.

At the time Howard was terminated, Fletcher and Dunn indicated to Giles, a present Jacobs employee, that Howard was terminated because he was a "problem employee".[29]   Dunn told Giles in confidence that with Phillips they had moved a "problem" employee from on department to another, however they did not intend to do the same with Howard. However, there were positions available in other departments, specifically the Piping Department that Dunn and/or Fletcher worked to undermine Howard from obtaining.

V.  CONCLUSION

For the reasons stated above, Jacob Engineering, Inc. has failed to demonstrate that it is entitled to judgment as a matter of law on claim or her related claim for liquidated damages;

_____

[29] Giles Deposition at 64. Also See Giles Letter

14

therefore, Kevin Howard respectfully requests that Jacob Engineering, Inc.'s Motion for Summary Judgment be denied.

Respectfully submitted

**BARNES & TURNER**

BY:_____
Jermaine S. Thomas
Attorney-In-Charge
Texas Bar No. 24033386
Southern District Bar No: 31098
440 Louisiana
1880 Lyric Centre
Houston, TX 77002
Tel. (713)650-3688
Fax. (713)650-0308
Attorney for Plaintiff
Kevin Howard

## CERTIFICATE OF SERVICE

I do hereby certify that a true and correct copy of the foregoing instrument was served on the following counsel of record on July 21, 2008, by Electronic Service on Timothy M. Watson at 700 Louisiana St., Suite 3700, Houston, Texas 77002.

_____
Jermaine S. Thomas

15